Usually, in the maritime arena, and this case involves an extension of the Longshore Act, the Ninth Circuit and the Fifth Circuits are at odds, usually butting heads in regards to their positions. However, I think this is one time when the Ninth Circuit will actually look to the Fifth Circuit for direction. As noted in the Squito case, we are here today to deter unscrupulous employers from dividing their work among a number of smaller, uninsured entities and to encourage general employers to contract with adequately insured subcontractors. This was the holding in the Squito case of the Fifth Circuit. You have very limited time, so I want to just get to some of my questions. Who exactly was Mr. Mikha employed by? Well, it's Mikha's contention that he was employed by a labor broker who was employed by Big Apple, who was employed through Fourth Creek, TWI, and Servco, who are all affiliated entities. Beyond, I think it was Mr. Nagel's letter of recommendation, it seems like at one point he said he was working for Mr. Nagel. Is that how he's working for those folks that you're saying he's working for? Well, we're in Iraq. We're in a war zone in 2005. I completely understand. It doesn't, though, affect our necessity to apply the facts to the law here. One of the main issues is whether he was employed by anyone and who he was employed by. It's not really clear from the record, or the evidence in the record, I'm not sure supports that Mr. Mikha was employed by Big Apple, and I'd like for you to tell me your best argument as to why he was. Where in the record does it best support that he was employed by that company? Thank you, Your Honor. I think what we need to gather here is we do have a common enterprise, and I understand the court's sometimes predicament of who Mr. Mikha, who worked for someone for approximately two weeks, knowing that Servco was the one in charge. They think the evidence is clear that Servco, TWI, and Fourth Creek employed Big Apple. It's also clear that Nagel was the agent for Fourth Creek. If you go through the records there, you'll note that he was their agent. Nagel, as their agent, stated that Mr. Mikha was, in fact, working for the benefit of Servco. Now, when we're dealing with these labor brokers, as Mr. Nagel testified, there was an Iraqi labor broker, there was a Kuwaiti labor broker. And what they do is they go out and they get Iraqi local nationals to do some of the work for them. And you'll note in the record that there were temporary employees that were hired by Big Apple. Well, there are a lot of problems with Mr. Mikha's statements and a lot of credibility issues that you'd have to survive to get to that point, but I appreciate that you're outlining the structure, but I'm not sure how that helps in terms of the adverse credibility determination that was made here by the ALJ. Well, the adverse determination made by the ALJ was because he based his decision and finding solely on the affidavit of Coleman Hoffman. Coleman Hoffman's affidavit fails for many reasons, and that's why the court then has to look to Nagel's testimony that, in fact, Mikha was there in the camp as a driver providing driving services on behalf of Servco. So if we look at Hoffman's declaration, Your Honor, we have to note that, one, Hoffman was not the person most knowledgeable designated by Servco and TWI. Mr. DeVoto was. The judge doesn't even address Mr. DeVoto's testimony and how it counteracts, in part, Mr. Hoffman's declaration. They recognized Eddie Nagel as their agent in the area. Also, Mr. DeVoto, the person most knowledgeable, stated that, in his opinion, Mr. Nagel would be the one most informative about what was actually happening in the area. Mr. Hoffman was their legal counsel. Third, Mr. Hoffman did not rely on all invoices as he testified in his declaration. He noted on page 150, the excerpts of record, that he referenced all invoices. So I'm sorry, Your Honor, but if I may just direct the court, because, as you said, my time is limited. Pages 404, 406, 407, 411, 409, and 4013 of the excerpts of record note, specifically, that the Big Apple invoice was for TWI and Servco employees. It didn't list Big Apple employees. It didn't list subcontractor, labor broker employees. Page 406. Well, are they listed anywhere in the record? Pardon me? Are the, do you agree Mr. Mika is not listed as an employee anywhere in the record? Sure, because the record doesn't have, that Mr. Hoffman provides, is not all the invoices. There are a number of pages missing from the invoices. The invoice from Big Apple notes that it paid tens of thousands of dollars to temporary employees. Where are those? It notes that Big Apple had hundreds, if not thousands, of employees working for it. Where are all of those names? The fact that his research only went to TWI and Forth Creek, in fact, Eddie Nagel's name is not even in there, your honor. So the fact that he's saying this provided all the employees for TWI, Servco, Forth Creek, that's not true. There's no salary in there for Eddie Nagel either. Well, that could be, but the evidence supporting finding him an employee appears to be, since there isn't any other evidence, the testimony, that was found not credible. The judge did not find Mr. Nagel's testimony not credible. He just disregarded it. He did find Mr. Sommey's. Well, because there were a lot of inconsistencies with it, there were a lot of problems with it. With Mr. Nagel's testimony? Yes. And it seems like there's three, your argument that he was employed, but these companies rest on three propositions, and the first is that Mr. Mikko was engaged in truck driving under Nagel's control. Second, that Big Apple provided trucking services for Servco, and that truck driving under Nagel's supervision at Camp Taki must have been for Big Apple. And then third, it looks like what you're asserting is that Big Apple was a subcontractor or common enterprise partner for TWI, so that employment for Big Apple was equivalent to employment by TWI. There seems to be a ladder of connections here that you're asserting that why he is an employee. That's correct. But that all falls if the first proposition is not established, and if Mikko was not engaged in truck driving under Nagel's control, then the relationship between Servco and Big Apple isn't really relevant to the panel's consideration. And what I can see, the only direct evidence in support of that first point is Mr. Mikko's testimony and the declaration of his friend Sammy and Mr. Nagel's letter of recommendation on his behalf. And it seems, from my read of the record, is that all has been discounted because of credibility findings made by the ALJ. And so that's why I've been asking you these questions, and to give you one more opportunity before we get to jurisdiction, because I do have a question on that. Sure, Your Honor. There is no evidence that counters Mr. Nagel's testimony that, in fact, Mr. Mikko was a driver in the camp. He had Mr. — as was noted in Mr. Hoffman's affidavit, they couldn't be in the camp unless they were authorized to be there. The fact that Mr. Nagel recognized him, not just in the letter of recommendation, but in his declaration and in his testimony, his sworn deposition testimony, that Mr. Mikko was, in fact, there as a driver driving for the benefit of Servco. That was not — that's not refuted. Mr. Hoffman tries to refute it, saying, well, we don't find Mikko's name. But Mr. Hoffman's affidavit is based on incomplete and insubstantial evidence. How can it refute Nagel? Okay. I thought there was — anyway, why don't we go to jurisdiction? I need to go to jurisdiction because it was given very short shrift in the briefs, and I think there is an interesting question presented here of whether or not we have jurisdiction on this appeal. And if we don't, what should the panel do? It looks like we're guided by Pierce. I don't know if you had a chance to look at this issue. Yes. And there's really limited language on the district where the official who originally decided the case, the deputy commissioner has office. It seems to be very important language on where the geographical jurisdiction is. Where do you weigh in on where the jurisdiction is? Do you think we have jurisdiction? Sure. As you are aware, the 1984 amendments noted some changes. But in regards to the — The 1984 amendments to — To the Longshore Act. Yes, yes. And the DBA under 42 U.S.C. 1651 adopts everything. And it looks like that's what the Pierce court was anticipating when it was making its statement there regarding jurisdiction. But it is the office in which the district director who issues the order resides, not the ALJ, because the ALJs are arbitrarily assigned from different places in the country. So how did it end up with the Virginia ALJ?  They come out of Oregon. They come out of Florida. They come out of Connecticut. They come out of Washington, D.C. They're assigned from everywhere. And you all agreed not to have a hearing in this case? Is that right? We agreed to submit it on the briefs and on the issue of the employer-employee relationship, Your Honor. Yes. All right. Thank you very much. Thank you. Will there be any time for rebuttal, Your Honor? I don't know. We'll see here. Okay. Thank you. Thank you. Thank you. We have a second. Good morning, Your Honor. May it please the Court. My name is Joshua Tropper. I'm here on behalf of TWI, DBA Servco, and I would like to start by saying something that is probably not normal for someone in my position, which is that setting aside whether Mr. Mika was employed by or for my client. As a citizen, I think we all respect and appreciate the work that any native Iraqi has done on behalf of the U.S. military. And that's not something that we want to downplay. As counsel said, Colonel Agle did testify Mr. Mika was at Camp Taji. He was driving a truck. He was injured by a roadside bomb while driving a truck from to Camp Taji, actually, I guess. He's a very sympathetic appellate. But counsel twice went further and said that Colonel Nagel testified that this was on behalf of Servco. And that's going farther than the evidence actually shows. Well, what does the, what in your view, did Nagel give any testimony in his deposition that was favorable? That was favorable to Mr. Mika? Yeah. No, Colonel Nagel's deposition testimony and affidavit were unambiguous that Mr. Mika was not employed by Servco. But it was favorable in the sense that he was a good worker, he saw him around, but he did ultimately when press said he was not employed. That's correct, Your Honor. And the only evidence, as the court observed, that suggests that he was employed by Servco was the letter of recommendation that Colonel Nagel gave. And Mr. Mika's deposition testimony was that that was the first time he ever spoke with Colonel Nagel was when he went and asked for the letter of recommendation. That's not something you do if that's been your boss. That's who you've been working for. So who else could Mr. Mika have been driving the truck for if he's driving into this camp and Servco is the, is one of the primary contractors? Point one, Your Honor, there's no evidence that Servco was one of the primary, primary contractor in the sense of government contracting, yes. Primary as in the sense of was it the biggest contractor at Camp Taji? No evidence on that. The only evidence is that Camp Taji was, and this is the word used in the record, is not just the current jargon term, huge, that there were hundreds of companies there. The evidence shows that there were at least two and some references to four labor brokers of which Big Apple was apparently the biggest, at least as far as the people at Servco were aware of. There's no evidence from Big Apple itself. The Mr. Mika's deposition testimony was that he had never even heard the name Big Apple. So were there other labor brokers that he could have been working for who were hiring people to drive trucks on behalf of one of the hundreds of other companies? Absolutely. That's quite possible. We don't know. Could he? It's also possible he was driving the truck for Servco but there's no record of it. Your Honor, possible, and you're all familiar with the burden of, the standard of review and the burden of proof here, so I won't waste time repeating that, but although possible, the evidence is that Servco's only mission at Camp Taji at the time Mr. Mika was there and was employed was the construction of life support systems. That's not the sort of thing that causes you to send deliveries from Camp Taji to something else. But it's difficult to believe that Servco employed no trucking services at all. Your Honor, it is, there is no reason to believe that Servco employed any, engaged any trucking services for deliveries from Camp Taji to somewhere else. Clearly the materials they were using for construction must have been brought into Camp Taji. So were there truck drivers in Iraq in 2005 who were employed by Servco? The evidence is unambiguous that there were not. The council mentioned that the several pages of Big Apple labor invoices which do not include either Mr. Mika or Colonel Nagel, well that's because Colonel Nagel was not employed by Big Apple, he was employed by TWI. Mr. Mika was not employed by Big Apple either, but we don't know who, by whom he was employed. And as he must have to have been serving at a U.S. military base in the war zone, he must have had credentials from somewhere. No such credentials could be found in any of the records of Servco or its parents or its affiliates. It's entirely possible that an inquiry could have been made, not only possible, it's certain, an inquiry could have been made as to who it was who issued those credentials to him and that would solve this problem, but that inquiry, if it was ever made, has never been disclosed in this proceeding. You're the one who raised the jurisdictional issue a little bit more. Yes, Your Honor. I'd like to talk about that a little bit because I'm not sure, you know, you should be making the arguments to us or to the Fourth Circuit or a district court in the Fourth Circuit. So tell me what's your view of jurisdiction in this case, as I've had a chance to look at our Pierce decision. I don't know if you've had a chance to look at it. Oh, yes, I have, Your Honor, and it is because of the Pierce decision that I felt my obligation to the court to alert you to the jurisdictional problem. Yeah, but you just kind of said, may they may answer some questions. Well, yes. And it is also my obligation to my client to encourage this court to resolve the matter rather than kicking us around the country. But it is my understanding, and that, and this is based on a, there's a price decision that was en banc in 2012, I believe, that just assumed that the jurisdictional statement in Pierce was correct. And there is an unpublished decision called Compton within the last six or eight months. No, and I know that a lot of, there's circuits go the other way. I mean, what Pierce decided, help me understand this, what Pierce decided, the main holding in Pierce, the way I read it, is that appeals from these kind of cases don't need to go to the district court, they should come directly to the circuit, is that correct? That is correct. And I know there's other circuits that have a different view of that, that they should go to the federal district court first, correct? That is correct. All right. But the interesting language as it relates to this case is who, where the geographical jurisdiction is, is based on the official who originally decided the case. And then in Pierce, they called it the deputy commissioner and where he has that office. I think that position was before we had a director position for the commission and we didn't have ALJs either, correct? Your Honor, it is my understanding, and I don't want to point to any particular case because I think this comes from reading as many of the cases in this as I could find. But my understanding is that the functions of the deputy director have been split over the decades and the administrative functions, excuse me, the deputy commissioner was the original title. That's still in the statute, unfortunately. The administrative functions, as noted by, in counsel's reply brief, in the regulations, the administrative functions were transferred to the district director. The adjudicatory functions were transferred to the ALJs. And the particular statutory provision on which, that says, the two provisions, one of which says that the, you, any judicial review goes to the district court where the office of the deputy commissioner whose decision is involved. If you follow that, then you would go to the, then you would say, well, there was no decision here by the district director, so this is one of those functions that was the ALJ. That ALJ is in Newport News, Virginia. The other statute says that appeals from ALJ decisions go to the benefits review board as what happened in this case, and the benefits review board appeals go to the court of appeals for the circuit in which the injury occurred. And in the Pierce case, this court determined that you can't leave without judicial review where the injury occurs in a place like Iraq where there is no judicial circuit. So the Pierce court says, we're going to blend these two statutes in a sense, and we're going to say that appeal from the benefits review board goes to the circuit court for the circuit where either the deputy commissioner or the ALJ, and the language I'm talking about, the Pierce court went on to say, we do not think that the substitution of an administrative law judge for the deputy commissioner, seeing what was going to be happening when there is a hearing, makes any difference. The language is, quote, it should now be treated as reading wherein is located the office of the deputy commissioner or the administrative law judge whose compensation order is involved. And in this case, because there was an adjudicatory decision by the ALJ, that clearly means the Fourth Circuit. Although there wasn't a hearing. Right. I'm not sure that that makes a difference, Your Honor. As I said before, I am very much afraid, and I think the appellant will join me in this, that if we get bogged down in the possibilities, then this case will end up going probably to this court, another embanked decision, and then up to the Supreme Court to resolve a conflict between the circuits. And it will be another 10 years before anybody knows whether Mr. Mika is really entitled to compensation or not. And so the law isn't entirely clear in the context of this case. It's not entirely clear. I'm not going to say you're wrong if you think you have jurisdiction. I understand. Thank you very much. Thank you. If there are any other questions, otherwise, I will yield counsel my remaining time for rebuttal. Well, you have no more time, but that's very generous of you. I thought I did. You're in the red. Sorry. I'll give you one minute. Thank you, Your Honor. The petitioner would like to direct the court to page 106, which is a chart. And I think the issue here is that the courts are having a difficult time being the finder of fact in getting past that second level, going past Big Apple. It is clear that there were labor brokers at Big Apple hired labor brokers to drive trucks. That's in the evidence. That's in the contracts. I'll direct the court's attention to that. In regards to this issue of borrowed servant, general contractor, it will note that the 1984 amendments did not change anything in that regard in regards to the borrowed servant or the general contractor. And I think what is happening here is it's not getting past the borrowed servant aspect to look at the general contractor liability. That if Mr. Mika was, in fact, a driver as Mr. Nagel testified, Mr. Somme testified, and Mr. Mika testified, and there is no evidence of any coverage under 904A, then under 905A, TWI, Fourth Creek, and Servco are responsible and liable as a general contractor. And that goes down indefinitely. Thank you. Thank you. Thank you both, Mr. Winter and Mr. Tropper, for your argument and presentations today. Very helpful. The matter of Mika v. Director, Office of Workers' Compensation Program, and Servco Solutions is now subpoenaed.
judges: Schroeder, Murguia, Gleason